IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| EUSEBIO L. BECERRA, | ) | |
| | ) | |
| Petitioner, | ) | 4:02cv3119 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| HAROLD W. CLARKE, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court on the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("§ 2254 petition") filed by the petitioner, Eusebio L. Becerra. Also before the court are the respondent's Answer to the § 2254 petition, and the parties' briefs regarding the petitioner's § 2254 claims and the respondent's defenses. The facts and history of the petitioner's case are set forth in the decisions by the Nebraska Supreme Court on direct appeal from the petitioner's conviction, State v. Becerra, 573 N.W.2d 397 (1998) ("Becerra I"); on appeal from the denial of the petitioner's first motion for postconviction relief, State v. Becerra, 624 N.W.2d 21 (Neb. 2001) ("Becerra II"); and on appeal from his second motion for postconviction relief, State v. Becerra, 642 N.W.2d 143 (Neb. 2002) ("Becerra III").

A jury convicted the petitioner of kidnapping and use of a firearm in the commission of a felony. As the Nebraska Supreme Court noted in Becerra III, Neb. Rev. Stat. § 28-313 defined the offense of kidnapping as follows:

> (1) A person commits kidnapping if he abducts another or, having abducted another, continues to restrain him with intent to do the following:
> (a) Hold him for ransom or reward; or

1

> (b) Use him as a shield or hostage; or
> (c) Terrorize him or a third person; or
> (d) Commit a felony; or
> (e) Interfere with the performance of any government or political function.
>
> (2) Except as provided in subsection (3) of this section, kidnapping is a Class IA felony.
>
> (3) If the person kidnapped was voluntarily released or liberated alive by the abductor and in a safe place without having suffered serious bodily injury, prior to trial, kidnapping is a Class II felony.

Becerra III, 642 N.W.2d at 147-48. "When Becerra was sentenced, a Class IA felony carried a penalty of life imprisonment, while a Class II felony carried a penalty of 1 to 50 years." Id. The petitioner received a sentence of life imprisonment on the kidnapping charge and a consecutive term of imprisonment of 2 to 5 years for the use of a firearm. Becerra II, 624 N.W.2d at 23-24.

## Apprendi

The petitioner challenges the kidnapping judgment and sentence in the above-entitled case, citing the principles expressed in the line of cases beginning with Apprendi v. New Jersey, 530 U.S. 466 (2000). See also Ring v. Arizona, 536 U.S. 584 (2002), Blakely v. Washington, 124 S. Ct. 2531 (2004), and United States v. Booker, 125 S. Ct. 738 (2005). The United States Supreme Court's decision in Apprendi v. New Jersey, requires that any fact, other than a previous conviction, which increases the penalty for a crime beyond the *lowest* statutory maximum must be alleged in the indictment or other charging document, submitted to a jury, and proved beyond a reasonable doubt. In Ring v. Arizona, the defendant's constitutional rights were violated when the judge imposed

2

a death sentence pursuant to an Arizona law that authorized the death penalty if the *judge* found one of ten aggravating factors. In Blakely v. Washington, the Supreme Court extended Apprendi to strike down part of Washington State's sentencing scheme in which a judge could impose an enhanced sentence on the basis of judicially determined facts. In United States v. Booker, 125 S. Ct. 738 (2005), the Court extended Blakely to the federal sentencing scheme which made the federal sentencing guidelines mandatory, and the Court prohibited upward guidelines adjustments based on *judicial* fact-finding.

The petitioner reasons that, because he could be sentenced only to the lowest applicable statutory maximum pursuant to the principles expressed in Apprendi, he could not have lawfully been convicted of an offense greater than a Class II felony, Neb. Rev. Stat. § 28-313(3), with a penalty no greater than an indeterminate sentence carrying a maximum prison term of 50 years. Id. In Becerra III, the Nebraska Supreme Court rejected that argument based on state law and on the distinction made by the Supreme Court in Apprendi between the constitutional significance of "aggravating factors," as opposed to "mitigating factors."

First, the Nebraska Supreme Court held that the petitioner misinterpreted state law. "We have held that § 28-313 creates a single criminal offense and not two separate offenses, even though it is punishable by two different ranges of penalties depending on the treatment accorded to the victim." Becerra III, 642 N.W.2d at 148. Accord Becerra I, 573 N.W.2d at 404 ("Initially, we point out that kidnapping as a Class II felony is not a separate offense from kidnapping as a Class IA felony.").

Next, the court in Becerra III explained: "The factors which determine which of the two penalties is to be imposed are not elements of the offense of kidnapping. The factors are simply mitigating factors which may reduce the sentence of those charged under § 28-313." Id. Apprendi indicates that if a fact merely decreases the maximum penalty for an offense, i.e., allows a defendant to escape the statutory maximum, then that fact is a mitigating factor which may be decided by the court instead of the jury. Apprendi v. New Jersey, 530 U.S. at 490 n. 16. See also United States v. Campbell, 317 F.3d 597, 603 (6th Cir. 2003): "Apprendi, however, specifically noted and reaffirmed the distinction between 'facts in aggravation of punishment and facts in mitigation.' .... The Court there noted that where a judge finds a fact which allows a defendant to 'escape the statutory maximum' attached to a jury verdict, that finding by the judge 'neither expos[es] the defendant to a deprivation of liberty greater than that authorized by the verdict according to statute, nor is the judge imposing upon the defendant a greater stigma than that accompanying the jury verdict alone.'" (Citation omitted.) Accord United States v. Outen, 286 F.3d 622, 638 (2d Cir. 2002) (defendant misreads Apprendi to require that the jury decide the absence of mitigating factors that would lower the mandatory minimum sentence).

In addition, even if Apprendi applied to Neb. Rev. Stat. § 28-313, an Apprendi claim may not be raised and applied retroactively on collateral review. See, e.g., Dellinger v. Bowen, 301 F.3d 758, 765 (7th Cir. 2002), cert. denied, 537 U.S. 1214 (2003); Sexton v. Kemna, 278 F.3d 808, 814 n.5 (8th Cir.), cert. denied, 537 U.S. 886 (2002) (state prisoner § 2254 habeas corpus petitions). See also United States v. Ayala, 313 F.3d 1068,

1069-70 (8th Cir. 2002), cert. denied, 540 U.S. 852 (2003); Jarrett v. United States, 266 F.3d 789, 791 (8th Cir. 2001), cert. denied, 535 U.S. 1007 (2002); United States v. Moss, 252 F.3d 993, 997 (8th Cir. 2001), cert. denied, 534 U.S. 1097 (2002) (federal prisoner § 2255 motions to vacate sentence). Consequently, the defendant's collateral attack on his sentence and conviction based on Apprendi must be denied.

## Sufficiency of the Evidence

The petitioner challenges the sufficiency of the evidence on which he was convicted of the Class 1A felony of kidnapping. The Nebraska Supreme Court found the evidence sufficient in Becerra I, 573 N.W. 2d at 402-03, and reiterated that conclusion in Becerra III, 624 N.W.2d at 24-25.

"In determining the sufficiency of the evidence in habeas cases under 28 U.S.C. § 2254, we view the evidence in the light most favorable to the prosecution and decide whether any rational jury could have found, beyond a reasonable doubt, all of the elements of the crime." Weston v. Dormire, 272 F.3d 1109, 1111 (8th Cir. 2001), *citing* Jackson v. Virginia, 443 U.S. 307, 320-21 (1979). "In applying this standard, '[t]he scope of our review ... is extremely limited .... We must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and we must defer to that resolution.'" Whitehead v. Dormire, 340 F.3d 532, 536 (8th Cir. 2003) (citations and internal quotation marks omitted). "[I]n reviewing the sufficiency of the evidence, we are not permitted to conduct our own inquiry into witness credibility; that is a task reserved to the jury." Robinson v. LaFleur, 225 F.3d 950, 954 (8th Cir. 2000).

In his brief on appeal from his conviction, the petitioner argued that the victim had been "liberated alive by the abductor and in a safe place without having suffered serious bodily injury" within the meaning of Neb. Rev. Stat. § 28-313(3), because the petitioner and the other perpetrators were armed, yet did not chase the victim or fire their weapons when the victim fled. However, the Nebraska Supreme Court found sufficient evidence in the record to support all of the *elements* of the offense, i.e., that the petitioner abducted and restrained the victim with intent to terrorize him, Neb. Rev. Stat. § 28-313(1) and (2). See Becerra I, 573 N.W.2d at 402-03.

As stated, the Nebraska Supreme Court has determined that the criteria in Neb. Rev. Stat. § 28-313(3) do not constitute "elements" of the offense of kidnapping under state law. Becerra III, 642 N.W.2d at 148. This court does not review a state court's interpretation of its own law. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). See also Taylor v. Bowersox, 329 F.3d 963, 968 (8th Cir. 2003), cert. denied, 124 S. Ct. 1681 (2004): "A state's interpretation of its own law is virtually unreviewable by a federal court." Accord Davidson v. Bowersox, 288 F.3d 1076, 1078 (8th Cir.), cert. denied, 537 U.S. 925 (2002): "It is not within the prerogative of a federal habeas court to question a state court's interpretation of its state's law...."

Thus, the issue is whether the jury's verdict rested on sufficient evidence of the

*elements* of the offense of kidnapping. The Nebraska Supreme Court determined in Becerra I that the record contained sufficient evidence to support the elements of the offense and little or no evidence to support the mitigating factors. See Becerra I, 573 N.W.2d at 404: "Moreover, there was no evidence that would support a finding by the trial court at sentencing that Washington was *voluntarily* released or liberated alive by Becerra. Washington's escape was made possible only through his own efforts and a measure of good fortune." (Emphasis in original.) The petitioner has failed to demonstrate that the Nebraska Supreme Court reached an unreasonable determination of the facts in light of the evidence presented at trial. See generally 28 U.S.C. § 2254(d)(2) and (e)(1):

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–   ....
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

The petitioner's § 2254 claim of insufficiency of the evidence must be denied.

## False Imprisonment

The petitioner alleges plain error in the trial court's failure to instruct the jury on the lesser included offense of first-degree false imprisonment. In Becerra II, the Nebraska Supreme Court rejected that argument, holding that under state law and based on the

7

evidence at trial, the petitioner was not entitled to a lesser included offense instruction on false imprisonment.

Nebraska uses the sequential "elements approach" set out in State v. Williams, 503 N.W.2d 561 (1993), to determine when a lesser-included offense instruction is appropriate.[1]

> In the first step, a court is to analyze the elements of both crimes at issue to determine whether the lesser offense is a lesser-included offense of the greater offense. If the lesser offense is found to be a lesser-included offense, a court thereafter goes on to the second part of the Williams test to determine whether an instruction on the lesser-included offense is justified based on the evidence at trial.

State v. Wright, 622 N.W.2d 676, 678, 680 (Neb. 2001).

The Nebraska Supreme Court determined that first-degree false imprisonment is a lesser included offense of kidnapping. Becerra I, 573 N.W.2d at 405; Becerra II, 624 N.W.2d at 25. Intent to terrorize is the element which distinguishes kidnapping from first-degree false imprisonment. Becerra I, 573 N.W.2d at 405. However, given the substantial evidence of specific intent attributable to the petitioner directly and as an aider and abettor to the kidnapping, there would have existed no rational basis for acquitting the petitioner of the greater offense of kidnapping and convicting him of the lesser offense of first-degree false imprisonment. Becerra II, 624 N.W.2d at 29-30.[2]

"To secure habeas relief, [a] petitioner must demonstrate that a state court's finding of [a factual issue] was incorrect by clear and convincing evidence, 28 U.S.C. § 2254(e)(1),

---

[1] Williams involved degrees of assault.

[2] Although procedurally defaulted and raised only indirectly on appeal from the petitioner's first postconviction proceeding, the issue was addressed by the Nebraska Supreme Court in State v. Becerra, 624 N.W.2d 21, 29-30 (Neb. 2001) ("Becerra II").

8

and that the corresponding factual determination was 'objectively unreasonable' in light of the record before the court." Miller-El v. Cockrell, 537 U.S. 322, 348 (2003). The petitioner has not demonstrated that the state courts' factual determination of intent to terrorize was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

### Ineffective Assistance of Counsel

The Sixth Amendment guarantees that an accused shall have "the Assistance of Counsel for his defense." U.S. Const. amend. VI. "It follows from this that assistance which is ineffective in preserving fairness does not meet the constitutional mandate ... and it also follows that defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." Mickens v. Taylor, 122 S. Ct. 1237, 1240 (2002), *citing* Strickland v. Washington, 466 U.S. 668, 685-86 (1984). See also Bell v. Cone, 122 S. Ct. 1843, 1850 (2002):

> We reasoned that there would be a sufficient indication that counsel's assistance was defective enough to undermine confidence in a proceeding's result if the defendant proved two things: first, that counsel's "representation fell below an objective standard of reasonableness," [Strickland,] 466 U.S., at 688...; and second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id., at 694.... Without proof of both deficient performance and prejudice to the defense, we concluded, it could not be said that the sentence or conviction "resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable," id., at 687..., and the sentence or conviction should stand.

In evaluating whether counsel's performance fell below an objective standard of reasonableness, the court must examine "whether counsel's assistance was reasonable

considering all the circumstances." Strickland, 466 U.S. at 688. "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690.

Strickland requires the court to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Accordingly, a defendant must overcome the presumption that counsel's challenged action "might be considered sound trial strategy." Id.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable .... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689.

To meet the prejudice prong of the test, the defendant must show a reasonable probability that absent his counsel's deficient conduct, the outcome of the defendant's trial would have been altered. "As a general matter, a defendant alleging a Sixth Amendment violation must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Mickens, 122 S. Ct. at 1240, *citing* Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

*Failure to Anticipate Apprendi*

The district court sentenced the petitioner on September 6, 1996, and the Nebraska Supreme Court rendered its decision on direct appeal in January of 1998. The United States Supreme Court did not issue its decision in Apprendi until June 26, 2000. In fact, the Supreme Court did not even grant certiorari in Apprendi until November 29, 1999 (528 U.S. 1018), almost three years *after* the defendant's sentencing and almost two years after disposition of the petitioner's direct appeal.

The inability of the petitioner's trial and appellate attorneys to anticipate the Apprendi decision did not constitute ineffective assistance of counsel. See, e.g., Brown v. United States, 311 F.3d 875, 878 (8th Cir. 2002) (counsel's decision not to raise an issue unsupported by then-existing precedent did not constitute ineffective assistance); Wajda v. United States, 64 F.3d 385, 388 (8th Cir. 1995) ("[C]ounsel's performance is not deficient by failing to predict future developments in the law."). See also United States v. Ardley,

273 F.3d 991, 993 (11th Cir. 2001), cert. denied, 535 U.S. 979 (2002). "Because our circuit law completely forecloses the contention that an attorney's failure to anticipate the Apprendi decision is ineffective assistance, district courts are not required to, and should not, hold an evidentiary hearing on that issue. There is no relevant evidence to hear. The issue is settled as a matter of law." Id., 273 F.3d at 993.

*Failure to Tender a Lesser Included Jury Instruction on False Imprisonment*

The petitioner suffered no prejudice traceable to his attorney's failure to tender a lesser-included offense instruction on false imprisonment. As stated, the Nebraska Supreme Court has determined that he was not entitled to such an instruction.

*Failure to Communicate a Plea Offer*

On appeal from the denial of the petitioner's first motion for postconviction relief, the Nebraska Supreme Court noted the factual findings made by the district court, after an evidentiary hearing, that (a) the prosecutor had not offered the petitioner or his trial counsel a plea agreement, and (b) the petitioner had emphatically stated to trial counsel that he did not wish to enter into plea negotiations. Becerra II, 624 N.W.2d at 25-26. The petitioner has not demonstrated by clear and convincing evidence that the state courts' determinations of those factual issues were incorrect, 28 U.S.C. § 2254(e)(1), or that the factual determinations were objectively unreasonable in light of the record before the court, 28 U.S.C. § 2254(d)(2).

On appeal from the denial of the petitioner's second motion for postconviction relief, the Nebraska Supreme Court stated:

> In July 2001, Becerra filed the motion for postconviction relief that is the subject of this appeal. In his motion, Becerra alleges that he learned that he was not told about a plea bargain. Becerra alleges that in 1998, an attorney, Michael Levy, called Becerra's family and left a message stating that he had learned from a prosecutor that a plea bargain offer was made. Becerra alleges that a family member kept the tape-recorded message and still has it. Levy was then hired to represent Becerra in his first postconviction proceeding. Becerra alleges that because Levy was acting as his attorney, he could not testify about what the prosecutor said, thus prejudicing Becerra in the postconviction proceeding. As a result, Becerra alleges that he received ineffective assistance of postconviction counsel.

Becerra III, 642 N.W.2d at 146. 28 U.S.C. § 2254(i) states: "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." Therefore, this claim is not cognizable on collateral review.

*Failure to Object to Admission of Videotape Evidence and to Leading Questions*

Federal courts may grant habeas corpus relief under § 2254 only when there has been a violation of federal statutory or constitutional law. Insofar as the petitioner challenges the admissibility, under state law, of evidence during his trial, he is not entitled to habeas corpus relief. See, e.g., Harrison v. Dahm, 880 F.2d 999, 1001 (8th Cir. 1989): "'[Q]uestions relating to the admissibility of evidence are matters of state law and generally do not give rise to constitutional errors which are subject to redress in federal habeas corpus cases.'" Accord Glaze v. Redman, 986 F.2d 1192, 1195 (8th Cir. 1993): "'Federal courts are not forums in which to relitigate state trials.' ... Questions of admissibility of evidence in state trials are matters of state law and ordinarily are not grounds for federal habeas relief." (Citations omitted.) "A state court's evidentiary rulings can form the basis

for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." Bounds v. Delo, 151 F.3d 1116, 1119 (8th Cir. 1998) (citations omitted). Accord Robinson v. LaFleur, 225 F.3d 950, 954 (8th Cir. 2000) (a state court's evidentiary rulings warrant federal habeas relief under the due process clause only when the error was so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the petitioner of due process). In this case, the petitioner has demonstrated no prejudice whatsoever from the admitted evidence or the allegedly deficient performance by counsel.

*Failure to Conduct Adequate Pretrial Investigation and Discovery*

The petitioner alleges that a prosecution witness, Deputy Wheeler, misquoted the petitioner at trial, stating that the petitioner had admitted that he had a gun and that he had kicked and punched the victim. According to the petitioner, those were not his statements to Wheeler, but instead were statements by the victim, and if the petitioner's trial attorney had conducted an adequate pretrial investigation, counsel could have impeached Wheeler.

In Becerra II, the Nebraska Supreme Court noted the district court's disposition of that claim in the petitioner's first postconviction action:

> [T]he district court found no evidence demonstrating that the law enforcement officer's testimony at trial was false or incorrect. Thus, the district court reasoned that while the testimony may have been impeached, it also may have provided the officer an opportunity to explain or amplify his answer. Given these findings, the district court found that ineffective assistance of counsel was not proved.

Becerra II, 624 N.W.2d at 26-27. In addition, in light of the totality of the evidence, the

14

statements in question were not of such significance as to indicate a reasonable probability that the outcome of the trial would have been different if trial counsel had been able to impeach Wheeler.

*Pursuit of "Choice of Evils" Defense*

The petitioner alleged on appeal from his first postconviction action that his trial counsel had rendered ineffective assistance by tendering a "choice of lesser harm" jury instruction and by arguing at trial that the petitioner participated in the kidnapping of the victim only in order to prevent harm to the victim and to the petitioner's family. Construing the § 2254 petition very liberally, the petitioner contends that his trial attorney chose an untenable strategy in light of the evidence, and that the petitioner would have been better served if counsel had instead argued that the petitioner lacked any intent to terrorize the victim.

However, in a habeas case, "[w]e do not 'second-guess strategic decisions or exploit the benefits of hindsight.'" Osborne v. Purkett, 411 F.3d 911, 918 (8th Cir. 2005) (citation omitted). "[O]ur scrutiny of counsel's performance is 'highly deferential,' and we presume that counsel's conduct 'falls within the wide range of reasonable professional assistance.'" Id., *citing* Strickland v. Washington, 466 U.S. at 689. "[W]e have frequently recognized that the strategic and tactical decisions made by counsel, though they may appear unwise in hindsight, cannot serve as the basis for an ineffective-assistance claim under Strickland." Evans v. Luebbers, 371 F.3d 438, 446 (8th Cir. 2004), cert. denied, 125 S.Ct. 902 (2005).

The petitioner has not established that he received prejudicial ineffective assistance

of counsel.

THEREFORE, IT IS ORDERED:

1. That the Petition for Writ of Habeas Corpus filed by Eusebio L. Becerra, is denied and dismissed with prejudice; and

2. That a separate judgment will be entered accordingly.

August 24, 2005. BY THE COURT:

/s *Richard G. Kopf*
United States District Judge